UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISRAEL MARTINEZ, on behalf of himself, individually, and on behalf of all others similarly-situated,<br><br>                     Plaintiff,<br><br>                     v.<br><br>JLM DECORATING, INC., JLM DEOCRATING NYC INC., COSMOPOLITAN INTERIOR NY CORPORATION, MOSHE GOLD, individually, and JOSAFATH ARIAS, individually,<br><br>                     Defendants. | No. 20-CV-2969 (RA)<br><br>OPINION & ORDER ADOPTING REPORT & RECOMMENDATION |

RONNIE ABRAMS, United States District Judge:

      Plaintiff Israel Martinez brings this action against three corporate Defendants—JLM Decorating, JLM Decorating NYC, and Cosmopolitan Interior NYC Corporation—and two individual Defendants, Moshe Gold and Josafath Arias. Martinez alleges that Defendants, operating as a single enterprise, violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to adequately compensate him and other hourly employees who performed manual labor for Defendants' painting and renovation business. After Martinez filed the Complaint, Plaintiffs Juan Carlos Benites, Rafael Brito, Harold Pena, and Rodrigo Rojas opted into the action. Plaintiffs now move for class certification under Federal Rule of Civil Procedure 23(b)(3), seeking to certify a NYLL class.

      Before the Court is Magistrate Judge Netburn's Report and Recommendation ("Report"), dated January 2, 2024, recommending that the Court grant Plaintiff's certification motion. Dkt. No. 142 ("Rpt."). The Report recommends that the Court certify a class consisting of "current and former non-managerial employees, who at any time from April 10, 2014, through the present,

performed any manual work, including but not limited to, painting and renovation work, for Defendants, in New York, and who were paid on an hourly basis." For the reasons that follow, the Court adopts Judge Netburn's thorough and well-reasoned Report in its entirety and grants Plaintiffs' motion to certify the class.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background and procedural history of this action, as detailed in the Report, and summarizes only the most pertinent facts here. According to the Complaint, Defendants JLM Decorating, JLM NYC, and Cosmopolitan are New York corporations that, under the same management and control, "provide painting services, wall covering, and renovation work to commercial customers in New York City." Compl. ¶ 32. Since 2014, Defendants Gold and Arias have jointly operated the business. *Id.* ¶¶ 33-35; Dkt. No. 137 ("Weiss Decl."), Ex. B ("Oct. 2022 Gold Tr.") at 16, 27, 33-34; Weiss Decl., Ex. C ("Feb. 2023 Gold Tr.") at 12-14, 32. In any given week, Defendants employ between 10 and 50 workers, *see* Oct. 2022 Gold Tr. at 92:3-92:13, most of whom are tasked with "painting and plastering on the interior and exterior of commercial buildings," Compl. ¶¶ 33-35.

Plaintiffs allege that Defendants systematically underpaid them, primarily by failing to pay overtime wages when they exceeded 40 hours of work in any given week; not compensating Plaintiffs' overtime hours at a higher overtime premium rate; and making some payments "off the books" in cash. *See* Weiss Decl., Ex. I ("Martinez Tr.") at 29-33; *id.*, Ex. J ("Benites Tr.") at 27-29; *id.*, Ex. K ("Brito Tr.") at 35-46; *id.*, Ex. L ("Pena Tr.") at 5:11-15; *id.*, Ex. F ("Rojas Tr.") at 34-35. Plaintiffs further assert that Defendants regularly produced inaccurate payroll records, did not maintain wage statements, and failed to provide newly hired employees with wage notices. *Id.*; *see* Compl. ¶¶ 48-72. Defendants contend that they regularly issued "group checks" to

compensate workers for overtime, but they did not verify if employees individually received accurate overtime payments. 2022 Gold Tr. at 101-103, 116, 165-168.

## PROCEDURAL HISTORY

In 2021, Judge Nathan, to whom this case was previously assigned, granted Plaintiffs' motion for conditional certification of a FLSA collective action. *See Martinez v. JLM Decorating Inc.*, No. 20-CV-2969 (AJN), 2021 WL 4253395, at *1 (S.D.N.Y. Sept. 17, 2021). Unlike the FLSA, "[i]n order to litigate the NYLL claims on a collective basis, [plaintiffs must seek] certification pursuant to Rule 23." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014).[1] On July 26, 2023, Plaintiffs filed a motion to certify a NYLL class pursuant to the Federal Rule of Civil Procedure 23(b)(3). *See* Dkt. No. 135. On January 2, 2024, Judge Netburn issued the Report, recommending that the Court grant Plaintiffs' class certification motion. On January 16, 2024, Defendants filed timely objections to the Report, Dkt. No. 143 ("Def. Obj."), and Plaintiffs responded on January 30, 2024, Dkt. No. 146 ("Pl. Obj. Reply").

## LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may object to a magistrate judge's recommended findings "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2). A court will review de novo those portions of a report to which the parties file "timely and specific" objections. *Parks v. Commissioner of Social Security*, 2017 WL 3016946, at *3 (S.D.N.Y. July 17, 2017). "To accept those portions of the report to which no timely

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Pabon v. Colvin*, 2015 WL 5319265, at *2 (S.D.N.Y. Sept. 11, 2015).

Before granting a class certification motion, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Rule 23(a) has four prerequisites: numerosity, commonality, typicality, and adequacy of representation. See Fed. R. Civ. P. 23(a). "If the Rule 23(a) criteria are satisfied, an action may be maintained as a class action only if it also qualifies under at least one of the categories provided in Rule 23(b)." *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013). As relevant here, Rule 23(b)(3) provides two additional requirements: predominance, mandating that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and superiority, requiring "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see In re Pub. Offerings Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). To succeed, the party seeking certification must establish these requirements by a preponderance of the evidence. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

## DISCUSSION

### I. Defendants' Objections to the Report

Defendants timely raise three objections to the Report, disputing Judge Netburn's recommendations as to numerosity, commonality, and the scope of the class definition. Def. Obj at 2-7. In particular, Defendants argue that the Report (1) erred in evaluating numerosity by "overlook[ing] critical nuances" and improperly inferring a sufficient class size "without direct evidence"; (2) failed to conduct a "granular, individualized assessment" when evaluating commonality; and (3) recommended an overbroad class definition of "manual workers" instead of "painters." *Id.*[2]

#### A. Numerosity

Rule 23 requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is "no magic number of class members needed to satisfy numerosity," it is generally presumed to include 40 members or more. *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021). Courts may rely on "reasonable inferences drawn from available facts" when evaluating numerosity, and a plaintiff "need not present a precise calculation of the number of class members." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004); *see German v. Fed. Home Loan Mortg.*, 885 F. Supp. 537, 552 (S.D.N.Y. 1995) (noting that a "[p]recise quantification of the class members is not necessary because the court may make common sense assumptions to support a finding of numerosity"). But a plaintiff must show "some evidence that provides the Court with a reasonable estimate." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

---

[2] Plaintiffs argue that the Court should review Defendants' objections under a clear error standard. Because timely objections were made, however, and because the objections are not general, conclusory, or overly repetitive, the Court will review them de novo.

"Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  A court's numerosity inquiry must therefore "take into account the context of the particular case" such as "whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).  But "[i]mpracticable does not mean impossible." *Robidoux*, 987 F.2d at 935.

In the Report, Judge Netburn concluded that the Court could presume numerosity because the proposed class exceeds 40 members.  Rpt. at 7.  After considering Defendants' list of employees—along with Plaintiffs' sworn declarations that identified other class-eligible employees—she found that the class "comprises at least 52 members."  *Id.*  Judge Netburn also found joinder impracticable because the putative class members are geographically dispersed and due to "language barriers that could affect 'the ability of claimants to institute individual suits.'"  *Id.* at 9-10 (quoting *Robidoux*, 987 F.2d at 936).

Defendants now argue that Judge Netburn erred by incorporating Plaintiffs' proffered names because doing so "effectively presumes, without direct evidence, that these individuals are non-managerial painters relevant to the class action."  Def. Obj. at 4.  Defendants further object to the Report's "dual approach to assessing the same piece of evidence."  *Id.*  They assert that the Report improperly considered Defendants' list of employees to evaluate numerosity after "critique[ing] the list's completeness."  *Id.*  This "contradictory treatment of the Defendants' list" therefore "undermines the integrity of the numerosity analysis."  *Id.*  The Court disagrees.

Because Plaintiffs have established that their proposed class contains 40 or more members, numerosity can be presumed. Plaintiff Martinez submitted a sworn declaration averring that, "while employed with Defendants," he "worked with and observed at least twenty-five other non-managerial employees who performed the same and/or similar duties" as he did. Dkt. No. 27 ("Martinez Decl.") ¶ 13. Plaintiff Benites's declaration similarly states that he "worked with and observed at least fifteen other non-managerial employees who performed the same and/or similar duties." Dkt. No. 28 ("Benites Decl.") ¶ 12. And Plaintiff Brito's declaration alleges that he observed "twenty-five other non-managerial employees" who he saw performing similar tasks, working for a similar amount of hours, and who "were all paid in the same manner as [himself], meaning that they were all paid by check … for only the first forty hours and were not paid at any rate for hours that they worked in a week over forty." Dkt. No. 29 ("Brito Decl.") ¶ 12. Together, Plaintiffs proffered 27 unique names of putative class members. In addition, pursuant to a previous court order, Defendants provided their own list of 29 non-managerial, hourly employees. *See* Weiss Decl., Ex. A. Between the two lists, the parties identify 52 putative class members.[3]

Defendants nevertheless argue that Judge Netburn erred by incorporating Plaintiffs' proffered names into her class size assessment because Plaintiffs did not provide direct evidence that each of the 27 individuals met the requirements of the proposed class definition. *See* Def. Obj. at 4. This argument is unpersuasive. Courts regularly consider pleadings, affidavits, interrogatory responses, and other sworn declarations when evaluating numerosity. *See, e.g.*, *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 394 (N.D.N.Y. 2011); *Noble*, 224 F.R.D. at 342. And all three declarations assert that these individuals were non-managerial employees who painted and performed other manual labor for Defendants. *See* Martinez Decl.

---

[3] These calculations exclude all duplicative names provided by either party.

7

¶ 13; Benites Decl. ¶ 12; Brito Decl. ¶ 12. Further, even if the names provided by both parties were insufficient to presume numerosity, the record contains other evidence that at least 40 non-managerial employees performed manual labor for Defendants' painting and renovation business during the relevant six-year period. Defendant Gold testified, for instance, that Defendants employed between 10 and 50 employees in any given week. *See* Oct. 2022 Gold Tr. at 92:3-92:13. Of that number, just "six or seven [were] office staff" with the rest serving as "hourly paid painters." *Id.* at 42:14-43:6. Since the proposed class spans six years (i.e., over 300 weeks), the Court can reasonably infer that the proposed class exceeds 40 members. *See Jackson*, 298 F.R.D. at 162 (noting that, because a defendant "generally employ[ed] around 50 [individuals] at any given time … and because the proposed class span[ned] six years, its membership likely substantially exceed[ed]" 40 members).[4]

Plaintiffs have also demonstrated that "joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), and that a class is therefore "superior to joinder," *Pa. Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 120. First, the putative class members are geographically dispersed, as they are scattered throughout New York and New Jersey. Defendants' own list, for instance, includes individuals residing in seven New York and three New Jersey counties. *See* Weiss Decl., Ex. A. Although the putative members are "not separated by vast distances," they are "sufficiently geographically dispersed across seven New York counties" to support a finding of impracticability. *Koss v. Wackenhut Corp.*, 2009 WL 928087, at *5 (S.D.N.Y. Mar. 30, 2009). Second, as Judge Netburn observed, Plaintiffs Martinez, Benites, Brito, Pena, and Rojas all testified with the aid of

---

[4] The Court also rejects Defendants' contention that Judge Netburn took a "contradictory stance" with respect to Defendants' own list or otherwise employed inconsistent evidentiary standards. *See* Def. Obj. at 2, 4. Numerosity analyses require reasonable estimates rather than precise calculations, and the Report reasonably considered Defendants' own list while recognizing that it was incomplete. *See Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919559, at *5 n.4 (S.D.N.Y. Apr. 12, 2023).

a Spanish interpreter at their depositions. *See* Weiss Decl., Martinez Tr. at 5:11-15; *id.*, Benites Tr. at 5:11-15; *id.*, Brito Tr. at 5:11-15; *id.*, Pena Tr. at 5:11-15; *id.*, Rojas Tr. at 5:11-15. These potential language barriers further support a finding of impracticability. *See Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *5 (S.D.N.Y. Mar. 31, 2017). Accordingly, Plaintiffs have met their burden of establishing numerosity.

### B. Commonality

Rule 23 also requires that there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement is the glue that holds class members' claims together. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011). "[C]ommonality turns on the ability of the action to generate common answers apt to drive the resolution of the litigation." *Elisa W. v. City of New York*, 82 F.4th 115, 123 (2d Cir. 2023). In other words, commonality is found when there is at least one question "such that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

When evaluating commonality, courts need not find that all claims for relief from all class members are identical. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Rule 23 instead "simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Id.* "Common issues—such as liability—may be certified … even where other issues—such as damages—do not lend themselves to classwide proof." *Id.* at 138. In NYLL wage cases, courts in this Circuit have found the commonality requirement satisfied where "[a]ll potential class members are alleged to have been harmed by a common practice" such as a defendant's "failure to adequately compensate employees for overtime hours." *Noble*, 224 F.R.D. at 343.

In the Report, Judge Netburn found that Plaintiffs established commonality by presenting five questions that are common to all proposed class members: "[W]hether the Defendants (1) had a policy of denying overtime wages; (2) compensated employees at the appropriate base and overtime hourly rates; (3) intentionally omitted overtime and Saturday hours from payroll; (4) provided employees with inaccurate wage statements; and (5) provided newly hired employees with wage notices." Rpt. at 10. The Report also concluded that differences in payment frequency or payment method (i.e., whether class members were paid in cash or check) did not prevent a commonality finding. *Id.* at 12.

Defendants object to this recommendation, arguing that the "variability in payment methods, far from being inconsequential, is a fundamental aspect that demands individualized examination." Def. Obj. at 5. Defendants also take issue with the Report's analysis of a particular case, *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435 (E.D.N.Y. 2014), asserting that the "principles upheld in *Velasquez*" should govern here. Def. Obj. at 5.

On de novo review, the Court finds that Plaintiffs have established commonality. Indeed, this action is a prototypical NYLL overtime dispute. *See, e.g.*, *Jackson*, 298 F.R.D. at 163; *Poplawski v. Metroplex on the Atl., LLC*, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012). According to the Complaint, during the relevant six-year period, all putative class members worked as hourly employees for Defendants; performed similar tasks, including painting and renovation work; were not paid overtime; did not receive accurate wage statements; and were never provided wage notices at the time of hire. Dkt. No. 1 ("Compl.") ¶¶ 3, 18, 35, 43. Each class member is also alleged to have been harmed by a common practice—for example, Defendants provided "group checks" which were intended to be distributed to employees working overtime but failed to verify where this money went or maintain any record of it. Dkt. No. 136

10

("Pl. Br.") at 1, 9-10; Oct. 2022 Gold Tr. at 119, 159, 165-168.  As the Report correctly noted, this case thus presents "several common questions that are susceptible to common answers," which adequately establish commonality.  *Poplawski*, 2012 WL 1107711 at *7.

The Court rejects Defendants' arguments to the contrary.

First, Defendants' reliance on *Velasquez*, 303 F.R.D. 435, is unavailing.  The plaintiffs in *Velasquez* could not establish commonality because there were "outstanding factual issues on whether the individual plaintiffs were exempt" from a statutory overtime requirement.  *Id.* at 442 (citing *Cuevas v. Citizens Financial Group, Inc.*, 526 Fed. Appx. 19, 22 (2d Cir.2013)).  Since the operative question there was whether a particular exemption under 29 U.S.C. § 207(i) applied to each plaintiff's individual circumstances, no common question existed.  *Id.*  Here, by contrast, Defendants do not suggest that any employees were subject to a statutory overtime exemption or otherwise articulate why an individualized analysis is needed.  As the Report rightly noted, the "individualized statutory analysis at issue in *Velasquez* varies greatly from the damages-related individual differences here."  Rpt. at 11-12.  Judge Netburn thus correctly distinguished the facts of *Velasquez* from the issues now before the Court.

Second, Defendants contend that commonality should fail because "the alleged wrongful acts were not executed in the same manner across the class due to the distinct payment methods."  Def. Obj. at 5.  But, because Plaintiffs' injuries "derive from a unitary course of conduct by a single system," differences in payment method, frequency, or amount do not defeat commonality.  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *see In re AM Int'l, Inc. Securities Litigation*, 108 F.R.D. 190, 196 (S.D.N.Y. 1985).  The central issue here is whether Defendants denied overtime wages and thereby failed to lawfully compensate their hourly workers.  *See* 12 N.Y.C.R.R. § 142–2.2 (requiring employers to pay employees at the rate of time and one-half for

hours worked more than 40 per week). That some differences exist about how and when putative class members were paid does not eliminate this common question. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding commonality despite "differences among the [p]laintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011).

Accordingly, Plaintiffs have met their burden to establish commonality.[5]

### C. Breadth of the Class Definition

Defendants finally object to the recommended class definition, arguing that "manual workers" is too broad and that the Court should "refine the class definition to include only painters." Def. Obj. at 6-7.[6]

---

[5] "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 89. Defendants do not appear to challenge the Report's finding that Plaintiffs established predominance. Nevertheless, to the extent that Defendants do impliedly seek to challenge it, the Court finds that Plaintiffs have established predominance. Whether Defendants here had a policy or practice of systematically withholding overtime pay "is a substantial, classwide question that is at the crux of whether the [D]efendants are liable." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 373 (S.D.N.Y. 2014). Thus, Plaintiffs' common questions "predominate over any questions affecting only individual members." *In re Petrobras Sec.*, 862 F.3d at 260.

[6] Plaintiffs argue that the Court "should reject this [objection] out of hand for Defendants' failure to raise any such argument in their underlying papers." Pl. Obj. Reply at 10. Although some judges in this Circuit have held that arguments "cannot properly be raised for the first time in objections to [a report], and indeed may not be deemed objections at all," *Tarafa v. Artus*, 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013), courts nonetheless have discretion to consider newly-raised arguments, *see Parks v. Comm'r of Soc. Sec.*, 2017 WL 3016946, at *3 (S.D.N.Y. July 17, 2017). The Court will address Defendants' argument because, among other factors, "efficiency and fairness militate in favor" of considering objections to the class definition. *Id.* After all, Rule 23 empowers district courts to "carve out an appropriate class" and provides several case management tools to do so, including the ability to alter or amend class certification orders before final judgment and to certify subclasses where necessary. *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 37 (2d Cir. 2009). Indeed, district courts may act sua sponte to redefine a class. *Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 3586460, at *3 (S.D.N.Y. Aug. 22, 2022). Thus, at this juncture, the Court will consider the proper scope of the putative class.

12

District courts are "empowered … to carve out an appropriate class." *Lundquist*, 993 F.2d at 14. When considering class certification, they also have "the discretion to revise an overly broad class definition." *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 56 (S.D.N.Y. 2000) (citing *Robidoux*, 987 F.2d at 937); *see In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007). Parties that challenge the breadth of a class definition often do so on "ascertainability" grounds, which requires a class "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015); *see, e.g.*, *Pichardo v. Carmine's Broadway Feast Inc.*, 2016 WL 5338551, at *6 (S.D.N.Y. Sept. 23, 2016); *Selby*, 197 F.R.D. at 56; *Morris v. Alle Processing Corp.*, 2013 WL 12363063, at *1 n.1 (E.D.N.Y. Oct. 22, 2013).

Defendants do not appear to challenge the Report's ascertainability finding or offer any judicial administrability concerns.[7] Instead, they contend that the term "manual work" is overbroad based on the factual record. Def. Obj. at 7. Drawing on principles from collective action case law, they maintain that Plaintiffs have failed to provide "detailed evidence for each job function within that category." *Id.* The Court disagrees.

The recommended class definition applies to "current and former non-managerial employees, who at any time from April 10, 2014, through the present, performed any manual work, including but not limited to, painting and renovation work, for Defendants, in New York, and who were paid on an hourly basis." Rpt. at 19. As Judge Netburn noted, the definition is limited by four objective criteria: class members must have been "(1) employed by the Defendants in New

---

[7] Indeed, there is no basis on which to conclude that Judge Netburn erred in finding ascertainability. To the contrary, she correctly notes that the class is defined by "four objective criteria" and the putative members are "easily identifiable from the Defendants' employment records." Rpt. at 15.

York; (2) paid hourly; (3) not managers; and (4) manual laborers." *Id.* at 15. Given these restrictions, the recommended class definition is not so broad as to violate Rule 23.

Defendants' objection to the breadth of "manual workers" is unpersuasive. As an initial matter, neither party asserts that Defendants ever categorized its hourly employees based on their primary job function or assigned responsibilities; no employee, for instance, was hired exclusively as a "painter" or a "manual laborer." Indeed, Plaintiffs allege that Defendants' wage and overtime policies applied to *all* non-managerial, hourly employees, who performed similar tasks and were all harmed by common practices. *See* Compl. ¶¶ 4, 17-21. Thus, at this stage, this is not a case where several sub-categories of employees necessitate subclasses. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 at 37; *cf. Ramirez*, 39 F. Supp. 3d at 360. Nor is this a case "where a plaintiff fails to provide sufficient details that the proffered unlawful policy or practice also affected employees in different job functions or roles." *Ramirez v. Liberty One Grp. LLC*, 2023 WL 4541129, at *8 (S.D.N.Y. July 14, 2023); *cf. Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 64 (E.D.N.Y. 2016) (rejecting a proposed collective action definition of "all non-managerial employees" where the record contained details about "laborers," including carpenters, welders, and mechanics, but lacked specificity about non-laborers, such as secretaries and clerical workers); *see* Def. Obj. at 6.

Despite Defendants' claims to the contrary, the factual record instead presents a single category of employees who participated in multiple tasks, all of which can be accurately described as manual labor.[8] Defendants therefore offer no compelling reason to limit the class definition to

---

[8] According to the Complaint, the corporate Defendants "operate as a single enterprise" that runs a "painting and renovation business for commercial clients." *Id.* ¶ 2. The services provided include "painting … wall covering, and renovation work," and Plaintiff Martinez's main duties "consisted of painting and plastering on the interior and exterior of commercial buildings." *Id.* ¶¶ 32-35. All putative class members completed similar manual tasks, including painting, plastering, repairing sheetrock, compounding, and other renovation activities. *See, e.g.*, Martinez Tr. at 28; Pena Tr. at 15-16; Oct. 2022 Gold Tr. at 56-62, 80-88.

a single job task (i.e., painting) when all putative class members participated in a range of related activities but were nonetheless harmed by a common practice. *See Niemiec v. Bendick*, 2007 WL 9627467, at *2 (E.D.N.Y. Mar. 30, 2007) (certifying a Rule 23(b)(3) class defined as "all employees of [defendants] … who performed work as handymen, painters, plumbers, maintenance workers, janitors, porters, superintendents and other workers with the same or similar duties who are entitled to compensation from the Defendants for … overtime premium wages"); *Hamelin*, 274 F.R.D. at 395 (granting class certification to a class that included "over 364 different job titles, covering 195 different departments, and multiple facilities."); *Gortat v. Capala Bros.*, 2009 WL 3347091, at *7 (E.D.N.Y. Oct. 16, 2009), *aff'd*, 568 F. App'x 78 (2d Cir. 2014). Accordingly, the Court adopts Judge Netburn's recommended class definition.

## II.     The Report's Remaining Rule 23 Findings

Defendants have not objected to the Report's recommendation that the other Rule 23 requirements are met, including typicality, adequacy of representation, predominance, superiority, or ascertainability. The Court, therefore, reviews them for clear error. *See Pabon*, 2015 WL 5319265, at *2. After careful consideration of the record, the Court finds no error. Plaintiffs have met their burden of establishing all Rule 23(a) prerequisites and 23(b)(3) requirements. The Court thus grants Plaintiffs' class certification motion under Rule 23(b)(3), and appoints Plaintiff Israel Martinez as Class Representative[9] and Borrelli & Associates, P.L.L.C. as Class Counsel.[10]

---

[9] In their class certification motion, Plaintiffs move for Plaintiff Martinez to be appointed as Class Representative. In the Report, Judge Netburn found that Martinez satisfies both adequacy and typicality. *See* Rpt. at 12-14 (finding that Martinez has the "incentive to prove all the elements of the cause of action" (quoting *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 71 (S.D.N.Y. 2009))). No party objects to this finding, and the Court finds no clear error in it.

[10] The Report also found that Borelli & Associates satisfies the class counsel requirements of Rule 23(g). *See* Rpt. at 14, 17-18. The Court reviews this determination for clear error, and it finds none.

### III.    Proposed Class Action Notice

For any class certified under Rule 23(b)(3), the Court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Plaintiffs' class certification motion also included a proposed class action notice, which Judge Netburn reviewed. The Report recommended that the Court deny Plaintiffs' request to disseminate their proposed class action notice and instead order Plaintiffs "to submit a revised notice consistent with the criteria set forth in Rule 23(c)(2)(B)." Rpt. at 19. Judge Netburn found Plaintiffs' proposed notice deficient in three respects: (1) the notice did not properly limit its geographic scope; (2) it failed to explain that class members may enter an appearance through their own attorney; and (3) it did not adequately describe the binding effect of a class judgment. *Id.* at 18; *see* Weiss Decl., Ex. P. Neither party objects to this recommendation. On January 16, 2024, Plaintiffs submitted a revised class action notice to "comply with Judge Netburn's recommendation" and to be "consistent with criteria set forth in Rule 23(c)(2)(B)." Dkt. No. 145.

The Court shares Judge Netburn's conclusion that Plaintiffs' previous proposed notice was deficient under Rule 23(c)(2)(B). Accordingly, Plaintiffs shall resubmit their revised notice to Judge Netburn for further consideration.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Netburn's thorough and well-reasoned Report & Recommendation in full. It is therefore ordered that an NYLL class is certified consisting of "current and former non-managerial employees, who at any time from April 10, 2014, through the present, performed any manual work, including but not limited to, painting and renovation work, for Defendants, in New York, and who were paid on an hourly basis." Additionally, Plaintiff Israel Martinez is appointed as Class Representative and Borrelli & Associates, P.L.L.C. is appointed as Class Counsel. It is further ordered that Plaintiffs submit a revised notice to Judge Netburn within fourteen days. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 135.

Dated:    March 20, 2024
         New York, New York

                                      Hon. Ronnie Abrams
                                      United States District Judge